**BROTHERHOOD OF RAILWAY, AIRLINE, AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, LOCAL 36, Plaintiff,**

v.

**BROTHERHOOD OF RAILWAY, AIRLINE, AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, AFL-CIO-CLC, and Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL-CIO, Conrail Systems Board of Adjustment No. 86, and Fred J. Kroll, Individually and in his official capacity as International President of the Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL-CIO-CLC, and Al Archual, Individually and in his official capacity as General Chairman of the Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express and Station Employees, AFL-CIO, Conrail Systems Board of Adjustment No. 86, and Consolidated Rail Corporation, Defendants.**

No. 80-72889.

United States District Court,
E. D. Michigan, S. D.

Aug. 26, 1980.

C. Thomas McCarter, Toledo, Ohio, Jeffrey M. Zabner, Southfield, Mich., for plaintiff.

T. Patrick Durkin, Frasco, Hackett & Durkin, Detroit, Mich., for defendant Conrail.

Harold A. Ross, Ross & Kraushaar Co., L. P. A., Cleveland, Ohio, James F. Schouman, Dearborn, Mich., for defendants BRAC, Conrail Systems Board of Adjustment No. 86, Fred J. Kroll and Al Archual.

RALPH M. FREEMAN, District Judge.

This is a labor dispute growing out of a decision by the defendant Consolidated Rail Corporation (hereinafter "Conrail") to close its Freight Revenue Billing Office in Detroit and transfer the work done by that office to Philadelphia. The Court's jurisdiction has been invoked under 29 U.S.C. §§ 412 and 464(a), 45 U.S.C. §§ 151 et seq. and 28 U.S.C. §§ 1331 and 1337. This matter is currently before the Court on plaintiff's motion for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. This motion was filed on August 12. On August 19, plaintiff filed a motion for a preliminary injunction. Since all the parties have notice and have appeared, the issues have been thoroughly briefed and the motion for a preliminary injunction is virtually identical to the motion for a temporary restraining order, the Court will at this time dispose of the motion for a preliminary injunction in accordance with Rule 65(a).

The plaintiff in this action is Local 36 of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter "Local 36"). Members of Local 36 are clerical workers on Conrail's general office staff in its Detroit office. Most of them work in the Freight Revenue Billing Department. Besides Conrail, the defendants are the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter "BRAC International" or "the International"), Board of Adjustment No. 86, a subordinate unit of the International directly responsible for the representation of Conrail's clerical employees, Fred Kroll, president of the International, and Al Archual, general chairman of Board of Adjustment No. 86.

Conrail was established pursuant to the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 701 et seq. (hereinafter "the 3–R Act"). In order to create "an economically viable system capable of providing adequate and efficient rail service" to the midwest and northeast regions of the United States, the 3–R Act reorganized the rail systems of several railroads in these regions into one corporation, Conrail.

The 3–R Act, in effect, required Conrail to hire all employees of the railroads that were reorganized under the Act who were not otherwise given employment under the reorganization plan. 45 U.S.C. § 772(b). Section 504(b) of the Act provided that prior to adoption of a final reorganization plan and conveyance of the lines of the reorganized railroads to Conrail, the labor representatives of employees of the reorganized railroads and representatives of Conrail were to negotiate a "single implementing agreement" for each class of affected employees providing, inter alia, "the procedure for determining the seniority of such employees in their respective crafts or classes on [Conrail's] system, which shall, to the extent possible, preserve their prior seniority rights." 45 U.S.C. § 774(b).

Accordingly, on July 23, 1975, Conrail entered into a single implementing agreement with all the labor organizations representing employees of the reorganized railroads. Article IV of this agreement was entitled "Seniority" and provided as follows:

The procedure for determining the seniority of employees in their respective crafts and classes to be effective upon a conveyance [of the reorganized railroads

to Conrail] shall be agreed upon by [Conrail] and the involved labor organization(s) representing each craft and class in accordance with the provisions of Section 504(b) of the Act. Such agreement shall become part of this Single Implementing Agreement for each respective craft and class.

Defendant Kroll signed this agreement on behalf of the BRAC International.

Pursuant to the July 23, 1975 agreement, Conrail and the BRAC International negotiated an agreement governing the seniority rights of BRAC–represented employees of railroad systems that were to be conveyed to Conrail. During these negotiations Conrail took the position that the seniority rosters for general office employees should be maintained separately from employees of divisional offices. The International eventually assented to Conrail's position on this issue. Archual affidavit, para. 13.

These negotiations produced an agreement dated August 1, 1975 implementing article IV of the single implementing agreement. This agreement set up a joint committee consisting of two representatives each from Conrail and the BRAC International to formulate a specific plan governing the seniority of BRAC–represented employees. This August 1 agreement provided that in drawing up a seniority plan, the joint committee would follow certain guidelines. The first of these guidelines was that:

Seniority districts will be established on a divisional concept basis except General Office districts will be established separately, unless otherwise mutually agreed to.

August 1, 1975 agreement, B, 1.

Finally, on January 26, 1976, Conrail and the International entered into an agreement delineating new seniority districts that would be established on the date of the conveyance of the reorganized systems to Conrail and specifically outlining the seniority rights BRAC–represented employees would have when they began working for Conrail. Seniority district 52 created by this agreement covered what was to be Conrail's general office in Detroit and included employees of plaintiff Local 36. Seniority district 19 was created to cover employees working in yards, terminals, and other outlying offices in an area extending from south of Detroit north to Mackinaw City. Included in district 19 were clerks working in Conrail's yards in the Detroit area. These clerks belong to BRAC Local 156.

The January 26, 1976 agreement provided that a separate seniority roster was to be established for each seniority district. Seniority was to date from the day on which an employee's pay started in his seniority district, except that the existing seniority of employees on old seniority rosters would be dovetailed into the new seniority districts. January 26, 1976 agreement, Rule B–2, article III, point A. Also, despite the creation of new seniority districts, employees were to have "prior rights to positions within the limits of their former railroad seniority district." Article IV, point A. The agreement also provided that the seniority districts it created could "be changed by mutual agreement between the appropriate officer designated by the Company and the General Chairman." Rule B–2.

The actual conveyance of the railroad systems reorganized under the 3–R Act to Conrail occurred on April 1, 1976.

The current collective bargaining agreement between Conrail and BRAC covering clerical employees went into effect on July 1, 1979. Rule 14(a) of this agreement, like the January 26, 1975 agreement, provides that an employee's seniority dates from the day he began working in his seniority district. Rule 15(a) provides that existing seniority districts "may only be changed by agreement between [Conrail's] Senior Director–Labor Relations and the General Chairman." Rule 13(a) of the agreement provides that an employee in one seniority district upon application shall be awarded positions in other seniority districts based upon his seniority in his home district, but only if no bids are received from qualified employees in the seniority district covering the position. Rule 18 allows an employee

whose position is abolished or who is displaced from his position to displace a more junior employee from his position.

Section 503 of the 3–R Act is entitled "Assignment of Work" and provides as follows:

> The Corporation shall have the right to assign, allocate, reassign, reallocate, and consolidate work formerly performed on the rail properties acquired pursuant to the provisions of this chapter from a railroad in reorganization to any location, facility, or position on its system provided it does not remove said work from coverage of a collective—bargaining agreement and does not infringe upon the existing classification of work rights of any craft or class of employees at the location or facility to which said work is assigned, allocated, reassigned, reallocated, or consolidated and shall have the right to transfer to an acquiring railroad the work incident to the rail properties or facilities acquired by said acquiring railroad pursuant to this chapter, subject, however, to the provisions of section 778 of this title.

45 U.S.C. § 773. Congress anticipated the hardship that giving Conrail the virtually unlimited right to transfer work might cause and tried to alleviate this hardship somewhat by enacting section 505 of the Act, 45 U.S.C. § 775, which affords certain benefits to employees deprived of employment, transferred or otherwise adversely affected with respect to their employment because of Conrail's actions.

In the spring of 1980, the members of Local 36 learned that Conrail was considering closing its Freight Revenue Billing Office in Detroit and transferring the work done by this office to Philadelphia. In response to this contemplated transfer, Local 36 passed a resolution requesting that Archual take "steps immediately for the merger of the seniority districts # 52 and 19." This resolution was communicated to Archual by a letter dated May 21, 1980 from Joan Brda, the chairperson of Local 36. Since employees in seniority district 52, including the members of Local 36, generally have earlier seniority dates than employees in seniority district 19, a merger of these districts would allow at least some members of Local 36 to displace more junior employees in departments outside of the general offices and thus avoid transfer to Philadelphia even if the Freight Revenue Billing operations are moved there.

Archual attended a Local 36 membership meeting on June 19, 1980 and informed those present that he could not merge the two seniority districts. During the week of July 14, 1980, J. Walsh, Conrail's Senior Director of Labor Relations, had notified Archual that Conrail would indeed be abolishing 248 clerical positions in seniority district 52 as of September 2, 1980. Archual and Walsh subsequently met to negotiate over what rights would be given employees whose positions were abolished as a result of the transfer of the work to Philadelphia. These negotiations were carried out pursuant to Rule 19(a) of the collective bargaining agreement, which provides:

> When new offices or departments are organized to take over work now being performed in other offices or departments or when consolidations, or other combinations or divisions of offices or departments are made, the General Chairman will be so advised not less than fifteen (15) days in advance of such change when more then five (5) positions are involved. When five (5) or less positions are involved, the General Chairman shall be so advised not less than ten (10) days in advance of such change. The re—arranging and the awarding of positions shall be by agreement between the Company and the General Chairman, provided, however, that in the case of work or positions not subject to the provisions of Rule 5, such work or positions shall be rearranged and assigned solely by the Company at its discretion.

These negotiations resulted in a letter of agreement dated July 23, 1980 signed by Walsh for Conrail and Archual for BRAC. This letter stated that 248 clerical positions would be abolished in seniority district 52 in Detroit and 182 positions would be created

in seniority district 26 in Philadelphia, effective September 2, 1980. Members of seniority district 52 would be given the first opportunity to bid for the positions created in Philadelphia. Members of seniority district 52 who did not obtain any of the positions in Philadelphia were to be given preferential consideration for vacancies arising in seniority district 19 within 30 miles of the Terminal Building in Detroit. The agreement also provided certain relocation benefits to employees who obtained one of the positions in Philadelphia.

Local 36 filed its complaint on August 5, 1980. Count 1 of the complaint charges that in refusing to act on the request by the local to merge seniority districts 19 and 52, the International, Board of Adjustment, Kroll and Archual violated certain unspecified provisions of BRAC's constitution and bylaws. Count 2 charges that in refusing to act on the merger request these same four defendants violated a provision of the Labor–Management Reporting and Disclosure Act (hereinafter the LMRDA) which guarantees members of labor organizations equal rights to vote in elections, attend membership meetings and participate in the conduct of such meetings and the right to meet and assemble with other members and freely express their views regarding union matters. 29 U.S.C. § 411. Count 3 asserts that the International, Board of Adjustment 86, Kroll and Archual agreed to "merge" seniority districts 52 and 26 in violation of section 304(c) of the L.M.R.D.A., 29 U.S.C. § 464(c), which sets forth certain procedures a labor organization must follow before depriving one of its subordinate bodies of its autonomy by placing it into trusteeship. Count 4 of the complaint alleges that in refusing to act on the merger request while at the same time agreeing with Conrail to the transfer of the positions from Detroit to Philadelphia, the International, Board of Adjustment 86, Kroll and Archual violated their fiduciary duties to members of Local 36 imposed upon them by section 501 of the L.M.R.D.A., 29 U.S.C. § 501. In Count 5 of the complaint plaintiff asserts that Conrail conspired to violate the sections of L.M.R.D.A. that counts 1 through 4 charge the union defendants with violating. Finally, count 6 of the complaint states that:

Defendants' actions herein constitute an illegal infringement upon the rights of Plaintiff as to their freedom of association, conditions of employment and right to organize in violation of the general purposes of Section 2 of the Railway Labor Act.

In its motion for a temporary restraining order, plaintiff requests that the Court (1) enjoin defendants from implementing the terms of the July 23, 1980 agreement concerning the transfer of work from Detroit to Philadelphia; (2) enjoin defendants from awarding the new Philadelphia positions to employees who have bid on these jobs; (3) require the International, Board of Adjustment, Kroll and Archual to "promptly and immediately process and expedite all requests and appeals by plaintiff for merger of seniority districts 52 and 19;" and (4) require the International to return certain documents seized from the Local's offices. Plaintiff's motion for a preliminary injunction seeks these four items of relief and in addition also requests the Court to "require defendants to merge seniority district rosters 52 and 19."

In determining whether to grant a preliminary injunction, there are four factors which the Court must consider: (1) whether the plaintiff has shown irreparable injury; (2) whether the public interest would be served by issuing a preliminary injunction; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits. *Mason County Medical Ass'n. v. Knebel*, 563 F.2d 256, (6th Cir. 1977); *North Avondale Neighborhood Ass'n. v. Cincinnati Metropolitan Housing Authority*, 464 F.2d 486 (6th Cir. 1972). The sixth circuit has not accepted the holding of *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953), that a preliminary injunction may be granted if it raises sufficiently serious legal questions going to the merits to make them a

fair ground for litigation. In this circuit, a plaintiff seeking a preliminary injunction must show probability of success on the merits.

■ As to the issue of irreparable injury, it is evident that if the members of the plaintiff local were unjustly required to move to Philadelphia to retain their jobs they would suffer an injury that would not be compensable by money damages. None of the parties have seriously addressed the issue of whether issuance of an injunction would be in the public interest. In regard to the third factor, that is, whether issuance of a preliminary injunction would cause substantial hardship to others, Conrail asserts that a delay in the planned move to Philadelphia would be extremely costly. However, the Court need not take testimony regarding whether Conrail would actually be damaged to the extent it claims, because it appears that plaintiff has not carried its burden of showing probability of success on the merits.

■ No employee has an inherent right to be afforded employment benefits on the basis of seniority. To the extent seniority rights exist they are derived from and limited by the collective bargaining agreement. *Elder v. New York Central R. Co.*, 152 F.2d 361 (6th Cir. 1945); *McMullans v. Kansas, Oklahoma & Gulf Railway Co.*, 229 F.2d 50 (10th Cir. 1956). As was stated in *Colbert v. Brotherhood of Railroad Trainmen*, 206 F.2d 9 (9th Cir. 1953):

> Seniority among railway workers is fundamentally and wholly contractual and it does not arise from mere employment and is not an inherent, natural or constitutional right.

206 F.2d at 13.

The collective bargaining agreement involved here, as well as the January 26, 1976 agreement between Conrail and BRAC, in providing that seniority districts could only be changed by agreement between Conrail and BRAC clearly precluded either the union or the company from unilaterally merging seniority districts.

■ Plaintiff advances several arguments to the contrary. First, it asserts that the July 23 agreement signed by Walsh and Archual in effect merges seniority districts 52, to which plaintiff's members belong, and 26, the district in Philadelphia that will include the 182 new positions. From this premise the plaintiff apparently wishes the Court to infer that the union can merge seniority districts without Conrail's approval. Even assuming that the July 23 agreement did merge seniority districts 52 and 26 rather than merely make provisions regarding the seniority of individual employees who transferred to Philadelphia, this in no way demonstrates that the merger of seniority districts can be done without the company's consent, since this purported merger was accomplished by an agreement between Conrail and the union. Plaintiff also points to the merger in 1972 of three seniority districts into one district, the present district 52, as evidence that the union can merge districts. But even if the seniority provisions in the agreement between BRAC and the railway involved in the 1972 merger were identical to those in the current collective bargaining agreement, which plaintiff does not assert, again the fact remains that the 1972 merger occurred with the consent of management and was not accomplished unilaterally by the union.

■ Plaintiff further argues that seniority districts are equivalent to locals, and since article 13, section 20 of the BRAC International Constitution gives the International President the authority to require consolidation of lodges, he may also consolidate seniority districts. The Court cannot agree with this interpretation. Even assuming that BRAC locals and seniority districts are generally geographically coextensive, the collective bargaining agreement clearly contemplates that lodges and seniority districts not be equivalent with regard to the power to effect a merger; Rule 15 unequivocally provides that both the union and the company must agree to any change in seniority districts.

Finally, plaintiff argues that Conrail "could have no objection to merge seniority districts 52 and 19 because plaintiff's members are able to perform the same work as employees in district 19." However, Conrail asserts that employees in seniority district 19 would not be qualified to hold the positions in the freight revenue billing department to be created in Philadelphia, and states in its brief that it "has not and does not agree to the consolidation of rosters proposed by plaintiff." Conrail's first brief in opposition to plaintiff's motion for a temporary restraining order, p. 12.

■ Regardless of Conrail's reason for not consenting to the merger, it has the prerogative under the collective bargaining agreement to withhold its consent. Plaintiff does not challenge the legitimacy of the collective bargaining agreement and its provisions are controlling. For the Court to require Conrail to agree to the merger or order that the seniority districts be merged despite Conrail's disapproval, would be to abrogate the collective bargaining agreement and deny Conrail the benefit of this agreement. This Court is simply without the power to nullify the collective bargaining agreement in this fashion.

■ The only mechanism for modifying a collective bargaining agreement in effect between a union and a railway is the one Congress provided in section 6 of the Railway Labor Act, 45 U.S.C. § 156. This section provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either par-

ty, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

While neither party has filed a section 6 notice, it would certainly be contrary to the policy of this section to disturb the status quo before the procedures contemplated by this section were completed. Status quo in this context means the existing contractual relationship between the parties; it does not mean that the employer is prohibited during the pendency of section 6 proceedings from taking action it is entitled to under the collective bargaining agreement. *Baker v. United Transportation Union*, 455 F.2d 149 (3d Cir. 1971); *United Transportation Union v. St. Paul Union Depot Co.*, 434 F.2d 220 (8th Cir. 1970) *cert. denied*, 401 U.S. 975, 91 S.Ct. 1194, 28 L.Ed.2d 324 (1971). In *Baker*, for example, the court held that the employer's practice of changing the sites of physical examinations given employees had, in effect, become part of the collective bargaining agreement the employer had with the union. The court stated that

> If management had had the ability of freely changing examination sites before the [section 6] notice, depriving it of that ability and requiring that it continue examination sites then in existence through the long, deliberately drawn out process of negotiations and mediation under the Act, would not be a continuation of any prior existing condition. It would be the creation of a new condition.

455 F.2d at 157. Similarly, since Conrail now has the prerogative under the collective bargaining agreement of vetoing changes in seniority districts, the policy behind section 6 requires that Conrail not be denied this prerogative until the collective bargaining agreement is changed pursuant to section 6.

Since even if plaintiff's allegations of misconduct by the union defendants are true, neither this Court nor the union can effect the merger plaintiff seeks, plaintiff is not entitled to an injunction prohibiting transfer of the work to Philadelphia, which Conrail admittedly has the right to do, and implementation of the July 23 agreement. Because plaintiff is not entitled to this relief, it has not shown probability of success on the merits. Besides the prohibition of the transfer to Philadelphia and the merger of seniority districts, plaintiff in its motion seeks to have the Court order the union defendants to process its request for a merger of the districts. However, in light of Conrail's opposition to the merger, to require the union defendants to further process plaintiff's request would be futile and for this reason this aspect of the preliminary injunction will be denied also.

Finally, besides the fact that Section 6 of the Railway Labor Act provides the exclusive means for modifying the collective bargaining agreement involved here, there is another reason why this Court does not have the power to deny Conrail its rights under this agreement. It appears to the Court that the complaint fails to allege · a cause of action against Conrail, and therefore the Court has no jurisdiction over it. Only two counts of the complaint mention Conrail. Count 5 charges that Conrail conspired to violate the LMRDA. It is well established that the LMRDA cannot support an action against an employer, even where a conspiracy between the employer and union is alleged. *Abrams v. Carrier Corp.*, 434 F.2d 1234 (2d Cir. 1970); *Duncan v. Peninsula Shipbuilders Assoc.*, 394 F.2d 237 (4th Cir. 1968). Count 6 of the complaint charges Conrail with violation of the general purposes of the Railway Labor Act listed in section 2 of the Act, 45 U.S.C. § 151a. This section only lists broad goals sought to be attained by the Act and does not create a cause of action as applied to specific conduct. Moreover, plaintiff has not alleged any conduct on Conrail's part that would conflict with the purposes set out in this section.

For the reasons stated above, plaintiff's motion for a preliminary injunction is denied. An appropriate order shall be submitted.